IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Midwest Air Technologies, Inc.,** ) | |
| Plaintiff, ) | |
| ) | No. 21 C 337 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| **JC US Inc., f/k/a Jewett-Cameron Lumber** ) | |
| **Corporation,** ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion to dismiss the complaint based on improper venue or, in the alternative, to stay the action pending arbitration [12], is granted in part. The case is dismissed for improper venue. Civil case terminated.

## STATEMENT

JC USA Inc. ("JC") develops and builds fencing, pet-home, and outdoor-living products. Midwest Air Technologies, Inc. ("MAT") manufactures and distributes similar products. From 2011 until 2020, JC and MAT had a distributorship relationship in which JC granted MAT the right to promote, market, and distribute to The Home Depot ("THD") eleven of its products, which were identified in an exhibit to the Amended and Restated Distribution Agreement ("Agreement") between the parties. JC agreed not to sell those products directly to THD, subject to certain exceptions. At some point in 2020, a dispute developed between the parties regarding their rights under the Agreement. After attempting to resolve the dispute informally, on January 8, 2021, JC filed an arbitration claim against MAT with JAMS, seeking, among other relief, damages for MAT's alleged breach of the Agreement by (1) using JC's trademarks, trade dress, designs, texts, and images on packaging and collateral materials, and (2) using JC's proprietary information to design and build new products, enhance and improve its own products, and modify and reverse-engineer JC's products. JC also brought a claim for intentional interference with economic relations.

On January 20, 2021, MAT filed the instant action alleging breach of contract, tortious interference with business relations, and declaratory judgment claims against JC.[1] JC moves to

---

[1] Specifically, MAT alleges, in part, that "after being acquired, on information and belief, by a private equity firm, JC reversed course" and "breached its contractual obligations to [MAT] by competing directly with [MAT] for the sale of products to THD that [MAT] had worked with JC to develop and that [MAT] was selling to THD on JC's behalf." (Compl., Dkt. # 1, ¶ 4.) MAT further alleges that "JC did so intentionally and willfully to damage [MAT]'s relationship with THD by taking business away from [MAT], and converting THD into JC's direct client for the products." (*Id*.)

dismiss the complaint for improper venue under Federal Rule of Civil Procedure ("Rule") 12(b)(3) or, in the alternative, to stay the action pending arbitration based on the arbitration provision in the Agreement. On the same date that MAT filed this action, it filed an objection to the arbitration with JAMS, asserting that it was improper pursuant to the Agreement's arbitration provision. JAMS subsequently refused to commence an arbitration. On March 8, 2021, JC issued a demand for arbitration before the American Arbitration Association.

The relevant arbitration provision states as follows:

> In the event any dispute between the parties arises concerning their respective rights or duties hereunder, the parties agree to notify the other party immediately and to first attempt to resolve the matter by negotiation. If no mutually agreeable resolution is reached after thirty (30) days, a party may demand arbitration. Any arbitration shall be held in Portland, Oregon, under the rules of American Arbitration Association [("AAA")]. One arbitrator shall conduct the arbitration and decide the matter. The decision of the arbitrator shall be binding. Judgment on any award may be entered and enforced in any court of competent jurisdiction.

(Agreement, § 7(e).)

Section 2 of the Federal Arbitration Act "mandates enforcement of valid, written arbitration agreements." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). It "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotation marks omitted). However, "because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (internal quotation marks omitted). "Under the FAA, arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017).[2]

As to the first element, the arbitration provision states that "[i]f no mutually agreeable resolution is reached after thirty (30) days, a party may demand arbitration." Pointing to the word "may," MAT argues that arbitration is not compulsory, and the matter should proceed in court. But the word "may" cannot be read in a vacuum to imply that arbitration is merely permissive. The word "may" modifies "demand." Under the parties' agreement, a party may demand arbitration; it does not have to, but it is permitted to, and if it does, then the arbitration *shall* be held in Portland under the Rules of the AAA, and the arbitrator's decision is binding. Given the Court's role to construe the Agreement to give effect to the intent of the parties based on the language they used, the Court concludes that an enforceable written agreement to arbitrate exists. *See Providence Health & Servs.-Or. v. Boulder Admin. Servs. Inc*, No. C16-745 TSZ,

---

[2] Whether the Court is deciding a motion to compel arbitration or one seeking dismissal for improper venue under Rule 12(b)(3), "the central question . . . is the same . . . : did the plaintiff[ ] agree to arbitrate the claims asserted in [its] complaint?" *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1096 (N.D. Ill. 2015) (citation omitted and alteration in *Bahoor*).

2016 WL 8222213, at *3 (W.D. Wash. Oct. 11, 2016) (rejecting argument that use of the word "may" in arbitration provision made it an "optional clause" and stating that "the Ninth Circuit has refused to extend this logic to similarly worded arbitration clauses") (citing *Collins v. Burlington N. R.R.*, 867 F.2d 542, 543-44 (9th Cir. 1989) (finding that arbitration was mandatory where the contract read: "within 20 days after the dispute arises it may be referred by either party to an arbitration committee")). *See also Akzo Chems., Inc. v. Anderson Dev. Co.*, No. 93 C 0498, 1993 WL 54548, at *2 (N.D. Ill. Feb. 26, 1993) (use of the word "may" in arbitration provision "should be understood as providing that either party to the agreement may elect to initiate arbitration proceedings. Once one party initiates arbitration, the parties are required to proceed in arbitration. Such a construction is fully consistent with the . . . sentence . . . which provides that arbitrators *shall* be appointed and a hearing *shall* be held once the initiator pays the required fees.") (emphasis in original).

JC next contends that because the dispute-resolution provision calls for arbitration in Portland, Oregon, the case must be dismissed for improper venue. "Under Section 4 [of the FAA], 'where an arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration.'" *Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co.,* 410 F. Supp. 3d 882, 887 (N.D. Ill. 2019) (citation omitted and emphasis in original citation). "Where a court faces a motion to compel arbitration in a forum outside of its district, it should dismiss the complaint under Rule 12(b)(3) if the parties' claims are subject to arbitration." *Id*. Thus, while this Court cannot compel arbitration in Portland, Oregon, it can dismiss the complaint for improper venue provided that the parties' claims are subject to arbitration.

MAT asks the Court to determine arbitrability while JC contends that arbitrability is a matter for the arbitrator to decide. The Supreme Court has instructed that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence." *Id*. (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, --- U.S. ---, 139 S. Ct. 524, 530 (2019)). Parties may so delegate in two ways: "First, a robust delegation clause conferring power to the arbitrator [can] suffice[] . . . ."; second, "while neither the Supreme Court nor the Seventh Circuit has passed on this issue, other federal appellate courts and courts within this district have held that incorporating AAA Rules within a contract also constitutes clear and unmistakable evidence to delegate arbitrability to arbitrators." *Id*. at 888 (citations omitted).

Here, the arbitration provision incorporates AAA Rules, and "[t]he 'consensus view' of federal case law is that the incorporation by reference of the AAA Rules is clear and unmistakable evidence of an intention to arbitrate arbitrability." *Ali v. Vehi-Ship, LLC*, No. 17 C 02688, 2017 WL 5890876, at *3 (N.D. Ill. Nov. 27, 2017). MAT does not dispute that the arbitration provision incorporates AAA Rules, but contends that the relevant rule, R-7(a), which states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," does not confer *sole* authority on the arbitrator to determine arbitrability. But, as the *Ali* court noted, "[t]here is unanimity across all other Circuits that have considered this question: they all hold that incorporating the AAA Rules is clear and unmistakable evidence of an intention to arbitrate threshold arbitrability issues." *Id*. (footnote

3

with citations omitted); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). While the Seventh Circuit has not expressly weighed in, it has noted that "agreement of the parties to have any arbitration governed by the rules of the AAA incorporate[s] those rules into the agreement." *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272 (7th Cir. 1976). This statement, along with the agreement of other courts on the issue, persuades the Court that incorporation of the AAA Rules constitutes a clear statement by the parties to place the determination of arbitrability in the arbitrator's hands.

For these reasons, JC's motion to dismiss is granted and the case is dismissed for improper venue.

**Date**: April 29, 2021

 **Ronald A. Guzmán**
 **United States District Judge**